JUSTICE WARNER
dissenting.
¶18 If one examines only a part of the record it appears that counsel *77 for Mr. Henderson could have spent more time and effort in representing his client. The entire record does not show that, under the circumstances, counsel’s representation was deficient. Most importantly, the Court’s analysis concerning whether Mr. Henderson suffered any prejudice because his counsel did not spend more time on the case does not reflect what a fair reading of the record actually shows. I must dissent.
¶19 The hearing on the petition for postconviction relief was held six years after the plea hearing and, as would be expected, counsel for Mr. Henderson could not remember the details of all of the events that occurred. The testimony of the attorney who appeared at the hearing on postconviction relief as an expert witness for Mr. Henderson only attacked the performance of his original counsel.
¶20 The record shows that Mr. Henderson was very familiar with the criminal justice system. He was convicted of aggravated assault in the late 1970's. He was convicted of sexual assault and sent to prison in 1989 and paroled in 1995. He had been charged with a DUI offense after being released on parole, and he was arrested for the present offense in March of 1996.
¶21 Because of his arrest on the charge in question, and his DUI arrest, Henderson’s parole was revoked. It is clear from the record that a major reason his counsel was unable to meet with Henderson in person was because he was in the Montana State Prison. It is also clear that counsel did have contact by letter with Henderson while he was at the prison, and counsel could not remember if there was further contact. Henderson presented no evidence that there were not further conferences between himself and his attorney.
¶22 The record also indicates that it was Henderson who requested a plea agreement. After Henderson’s counsel solicited a plea agreement on the instruction of his client, such was offered by the county attorney and a written agreement form was sent to Henderson at Deer Lodge. There is no indication that he did not receive this agreement, that he did not understand it, or that he objected to its terms.
¶23 At the time of the plea hearing back on September 11, 1996, Henderson complained that he had not spent much time with his counsel, but said that he accepted the representation. He did say that the contraband pills were not his. Thus, the agreement for a guilty plea was discarded and the court and counsel discussed a trial date. A recess in the proceedings was ordered so that Henderson and his counsel could discuss the matter, and a date for trial could be arranged. The record is clear that counsel did not believe the trial would occur within a couple of days. There is no evidence whatever *78 that the prosecution’s offer of a quick trial was a reasonable possibility. The District Court found as a matter of fact in its order denying postconviction relief that defense counsel was correct in his opinion, which was formed back in 1996, that the trial would not have been so quick. The record does not support the proposition that the offer of a quick trial had any coercive effect on Henderson whatever.
¶24 The off-hand statement of the county attorney that he might consider asking the court for permission to file a notice of intent to declare Henderson a persistent felony offender may or may not have been the subject of a discussion between Henderson and his counsel during the recess. Counsel did not remember, and Henderson did not testify. What is known is that Henderson qualified as a persistent felony offender, and that procedurally the prosecution could not seek such status without a further court hearing. Certainly, Henderson has not presented any evidence that he was unduly coerced by the county attorney’s statement.
¶25 As noted, after determining that a guilty plea was inappropriate, the court recessed so that Henderson could consult with his counsel. At that juncture in the proceedings Henderson was in no way bound by the plea agreement, had a right to go to trial, had all the time he wanted to discuss the matter with his lawyer, and to make a decision as to whether he wished to stand on his plea of not guilty and have a trial date set, to plead guilty at that time, or plead guilty later. Then, after Henderson’s consultation with his lawyer, the parties returned to the courtroom, counsel announced that Henderson had decided he would enter an “Alford Plea,” and he did so. The court then determined that the plea, which was not an admission of guilt but an admission that the State had enough evidence to convict, was made with knowledge of the consequences and was voluntary. Of course, not only did Henderson have considerable knowledge of the procedures because of his previous experiences, he had in this case signed a writing that acknowledged he was aware of his rights.
¶26 The sentence imposed was exactly what the parties bargained for. A commitment to the Department of Corrections for five years for placement in 8m appropriate facility or program, which gave Henderson the possibility of placement outside the wall after his sexual assault sentence was discharged or he made parole.
¶27 In this proceeding for postconviction relief, Henderson presented no evidence of a reasonable possibility that the pills in question were not contraband, that his arrest was illegal, or that a dispositive motion was available to him. The record is simply devoid of any real evidence that Henderson’s plea was not voluntary.
*79 ¶28 Henderson, in effect, pled guilty. When a guilty plea is at issue, rather than a verdict of guilty, before any deficient performance of counsel results in a constitutional violation, the defendant must demonstrate that but for such deficient performance he would not have pled guilty and would have insisted on going to trial. State v. Senn (1990), 244 Mont. 56, 59, 795 P.2d 973, 975, citing Hill v. Lockhart (1985), 474 U.S. 52, 59, 106 S.Ct. 366, 370, 88 L.Ed.2d 203, 210. To establish a constitutional violation of the right to the effective assistance of counsel in the entry of a guilty plea, the evidence must show that there is a reasonable probability that, but for counsel’s errors, he would not have pled guilty. A reasonable probability is one that is sufficient to undermine confidence in the outcome. State v. Turner, 2000 MT 270, ¶ 65, 302 Mont. 69, ¶ 65, 12 P.3d 934, ¶ 65. In my view, this means more than a reviewing court would like to have seen a better job of representation. It means that there is some real evidence that the outcome would have been different if the lawyer would have done better. The standard is that more is required than the possibility of some influence on defendant. It is a standard that requires evidence to show that it is probable that a defendant would not have pled guilty.
¶29 Henderson has presented only evidence attacking the performance of counsel prior to the time of the hearing on September 11,1996. He presented no evidence that would undermine confidence in the ultimate outcome of the case. Contrary to the bold statements of the Court, he presented nothing that indicates he was influenced by any lack of prior contact with counsel. Not only is there no evidence to the contrary, the record supports the proposition that with knowledge of the real facts surrounding the charge of possession of dangerous drugs, and with knowledge of the probable outcome, Henderson made a conscious and informed decision to admit that the prosecution had enough evidence to convict him.
¶30 It is the obligation of the defendant on a complaint of ineffective assistance of counsel to affirmatively show that he was prejudiced by the alleged errors. Strickland v. Washington (1984), 466 U.S. 668, 693, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674. Contrary to established precedent, the decision of the Court makes the prosecution responsible for alleged attorney errors that it had no means to prevent, and results in reversal of a conviction over eight years later. I dissent.